Filed 2/28/23  Tang v. Blatt CA1/4
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| INDIA BLATT TANG et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>MICHAEL BLATT et al., as Trustees, etc.,<br><br>        Defendants and Respondents. | A163147<br><br>(Marin County<br>Super. Ct. No. PRO1792513)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on February 6, 2023, be modified as follows.

1.      On page 17, in footnote 5, after the sentence which ends, ". . . and no citations to legal authority addressing that issue." insert, continuing in the same paragraph, the following sentences:

> In her petition for rehearing, India also contended that the uncertainty presumption was raised at the hearing for plaintiffs' new trial motion.  We again disagree.  Plaintiffs' counsel argued only that the court must draw "reasonable inferences" in favor of plaintiffs and determine "what likely would have occurred" based on the facts of the case.

2. On page 17, in footnote 5, in the sentence which begins, "But even if the issue had been raised . . . ." insert "or at the hearing for the motion" after the phrase "raised in the new trial motion" so that the sentence reads:

> But even if the issue had been raised in the new trial motion or at the hearing for the motion, it would have been too late.

3. On page 18, in footnote 5, insert the following at the end of the footnote:

> India also argued in her petition for rehearing that the court is required to grant rehearing under Government Code section 68081 because respondents did argue forfeiture in their respondents' brief. Although respondents did not raise the forfeiture issue and addressed the argument on the merits, we may still find the issue forfeited. (*S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 722 [deeming issue waived even though respondent had addressed issue on the merits].)  Since the assertion of an issue in the trial court is generally required to preserve the claim for appeal, it is encompassed in the uncertainty presumption that India raised and she therefore had the opportunity to brief it. Accordingly, we may affirm on the ground of forfeiture even though the parties have not briefed it. (Cf. *People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534 [provision of adequate record on appeal is "a procedural and substantive requirement on the part of any party . . . asserting a position on appeal" and thus Gov.Code, § 68081 does not require briefing of issue of inadequate record].)

There is no change in the judgment.

The petition for rehearing, filed February 17, 2023, is denied.

02/28/2023                                STREETER, Acting P. J.

Filed 2/6/23  Tang v. Blatt CA1/4 (unmodified opinion)
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| INDIA BLATT TANG et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MICHAEL BLATT et al., <br><br> as Trustees, etc., <br><br> Defendants and Respondents. | A163147 <br><br> (Marin County <br> Super. Ct. No. PRO1702513) |

Plaintiffs India Blatt Tang and Ashley Blatt are trust beneficiaries who alleged, as relevant here, that the trustees, defendants Michael Blatt and Valerie Wall, breached their fiduciary duties by failing to properly notify them of the existence of the trust following the death of the settlors, as required by former Probate Code section 16061.7,[1] because the notice was mailed to them "c/o" their father at an address at which they did not live. After a bench trial, the court found for plaintiffs in part on their claim that defendants improperly administered the trust, but found that plaintiffs' failure-to-notify claim was "inconsequential" and that they had not established that defendants' defective notification under former section 16061.7 caused them damage.

---

[1] All further undesignated statutory references are to the Probate Code.

Plaintiffs argue that the evidence at trial established that the ineffective notice did cause them damage in the form of attorney's fees they otherwise would not have incurred, and that to the extent the evidence was insufficient, any uncertainty about whether the lack of notice caused harm should be charged to defendants. We find no basis to reverse the trial court's decision that an award of attorney's fees was not warranted, and accordingly we affirm the judgment.

## BACKGROUND

### A. Creation and Division of the Trusts

Plaintiffs are sisters, and India is Ashley's conservator. Defendants are plaintiffs' paternal uncle and aunt.

Plaintiffs' grandparents, Raymond and Barbara Blatt, created the Raymond C. Blatt and Barbara R. Blatt 1988 Trusts in 1988. The trust agreement provided that when the last surviving grandparent died, and after debts were paid and specified items of personal property distributed, the trustee was to divide the trust estate into equal shares, one for each of the grandparents' living children, defendants, and Steven Blatt, plaintiffs' father. The share allocated to Steven was to be retained and administered by the trustee in a separate trust. Under the terms of the trust, Steven would be entitled to annual distributions of $12,000 from the net income of his trust during his lifetime.

The trust agreement further provided that upon Steven's death, the trustee was to divide his trust into equal shares, one for each plaintiff, and those shares were to be retained and administered in separate trusts. A 1995 amendment to the trust provided that when India reached the age of 30, the trustee was to distribute outright to India the balance of her trust.

2

## B. The Section 16061.7 Notice

Raymond died in 1991, and Barbara died in 1998, at which point defendants became trustees. Michael retained an attorney, who sent a notification to the trust beneficiaries under former code section 16061.7 that all the trusts and sub-trusts of the Raymond C. Blatt and Barbara R. Blatt 1988 Trusts became irrevocable in November 1998, the month Barbara died. As required by former section 16061.7, the notification advised the recipients that they were entitled to receive a copy of the trust. (Former § 16061.7, subd. (a), added by Stats. 1997, ch. 724, § 23.[2]) Defendants mailed the notification to plaintiffs "c/o" Steven at an address in Healdsburg, California.

The evidence adduced at trial in this action indicates that India never received the notification and did not learn about her and her sister's interests in the trust until after their father died in December 2014, more than sixteen years after Barbara's death.

## C. The Sonoma County Action and Defendants' Petition for First Account

In 2017, a couple of years after Steven died, plaintiffs filed a petition in Sonoma County Superior Court for, among other things, relief under sections 16420 and 17200 and for an accounting of the trust. According to the petition, defendants did not inform plaintiffs of their vested rights under the trust until 2014, and they thereafter failed to respond to plaintiffs' requests for information about the trust. The petition further alleged that since 1998, defendants had not provided any accounting or report of trust assets, expenses, and distributions, and after Steven's death, they provided India with only one financial document, which showed the amount of funds in a

---

[2] All further references to former section 16061.7 are to this version of section 16061.7.

trust investment account in March 2015. The court dismissed the petition for improper venue a few months later.

A month before the court dismissed plaintiffs' Sonoma County action, defendants provided plaintiffs a copy of an accounting for the period of December 2014 to March 2017, and asked plaintiffs to consent to the accounting. After receiving no response from plaintiffs, defendants initiated this action by filing a petition to settle first account under section 17200.

Plaintiffs filed objections to the petition to settle first account, asserting that defendants, in their capacity as trustees, failed to provide timely accountings to plaintiffs until they filed their Sonoma County petition. The objections also contained allegations like those in the Sonoma County petition regarding defendants' failure to notify plaintiffs of their interests in the trust. Plaintiffs later filed a petition to compel defendants to allow inspection of trust records showing how defendants had administered the trust since 1998. Over defendants' objections, the court granted plaintiffs' petition to compel.

## D. Plaintiffs' Petitions for Surcharge and for Accounting

In February 2019, plaintiffs filed a petition for surcharge, for relief for breach of trust, to recover trust property, and to redress financial elder abuse. They amended the petition in September 2019. The amended petition alleged in part that defendants breached their duties as trustees by failing to maintain records, making it difficult to determine how defendants managed Steven's trust from 1998 to 2014, and by imprudently investing trust assets and using the trust's money to pay for their expenses.

In October 2020, plaintiffs filed a petition to compel defendants to account for the period of November 1998 to December 2014. Plaintiffs alleged in the petition that defendants' production in response to the court's order

4

granting plaintiffs' petition to compel did not include any check registers, fiduciary income tax returns, financial statements, or bank statements dated before January 2012. According to the petition, India was unable to obtain records from other sources, and many records no longer existed, and therefore it was impossible to tell whether defendants fulfilled their fiduciary duties by, for example, distributing only the net income from Steven's trust during his lifetime.

### E. The Trial

In January 2021, plaintiffs filed an issue conference statement detailing the facts and law pertinent to defendants' alleged failure to fulfill "any" of the fiduciary duties they owed to plaintiffs. Those duties included the duty to administer the trust according to its terms (§ 16000), the duty to keep beneficiaries reasonably informed of the trust and its administration (§ 16060), and the duty to serve notification on each beneficiary when a revocable trust or any portion of it becomes irrevocable because of the death of one of the settlors (§ 16061.7).

Trial took place later that month. India testified in support of plaintiffs' breach of fiduciary duty claims. As to defendants' alleged failure to notify plaintiffs under former section 16061.7, India testified that she did not learn about her and her sister's beneficiary status until Michael told her about the trust after her father died in December 2014, more than sixteen years after Barbara's death. She further testified that she never authorized anyone to send her mail in the care of her father, and that neither she nor her sister lived at the address to which defendants sent the section 16061.7 notification.

Regarding defendants' alleged failure to keep plaintiffs reasonably informed of the trust administration, India testified that after Michael

5

mentioned the trust in December 2014, she requested a copy of the trust instrument around April 2015, and she also inquired about the terms of the trust and the trust assets. Shortly thereafter, Michael sent India copies of the trust instrument, an amendment to the trust, and one page of a statement for a Schwab account. India testified that she called Michael several times in the following months and sent him an email in September 2015 in an effort to obtain additional information about the trust. She further testified that after the September email, all communication stopped until December 2015, when she received a $100,000 check, which she believed was a distribution from the Schwab account. India's attorney also sent letters to Michael in 2016 asking for trust records and for an accounting.

Michael testified that when Barbara died in 1998, he engaged an attorney who helped him with the initial steps of administering the trust until 2000, and he did not have any understanding in the first year of what his duties were as co-trustee independent of what his attorney told him. He further testified that he distributed $12,000 a year to Steven from Steven's trust for four or five years and paid expenses for a house defendants owned using trust assets without considering the trust's net income.

## F. The Statement of Decision

The trial court issued a tentative decision in April 2021 addressing plaintiffs' causes of action in their amended petition to surcharge. The court found that defendants had made unauthorized distributions to Steven from the trust principal between 1998 and 2010, and ordered defendants to pay $196,000. Because defendants did not keep account records, the trial court based the amount of the award on Michael's testimony that he gave Steven $12,000 per year for five or six years. The court also found that defendants had made improper distributions totaling approximately $11,000

6

between 2010 and 2015. The court found for defendants on plaintiffs' other claims in their amended petition to surcharge. The trial court did not address plaintiffs' claims that defendants breached their duty to notify under former section 16061.7 and their duty to keep beneficiaries reasonably informed under section 16060.

Plaintiffs filed objections to the tentative decision, requesting findings that respondents breached their duty to notify plaintiffs under former section 16061.7, that respondents were liable for all damages caused by that breach, and that respondents breached their duties to keep plaintiffs reasonably informed under section 16060 and to report to plaintiffs under section 16061.

The court issued a final statement of decision (SOD) in April 2021. The court's findings in its tentative decision remained largely unchanged in the SOD, with the exception of the claim that defendants made improper distributions during the time period of 1998 to 2014. Instead of awarding plaintiffs for those improper distributions, the court found that plaintiffs had not been harmed by those distributions. The court found for plaintiffs solely on the claim that defendants made improper disbursements after Steven's death, and awarded plaintiffs a judgment in the amount of $2,369.99.

The court also briefly addressed plaintiffs' failure-to-notify and failure-to-inform claims, finding that those claims were "inconsequential." Regarding defendants' alleged failure to provide plaintiffs with adequate notice under former section 16061.7, the court found that although the notice was defective, plaintiffs had failed to establish that the defective notification caused damage. The court also found that Michael had failed to keep plaintiffs informed about the trust and its administration, but it said nothing further about plaintiffs' failure-to-inform claim.

7

## G. Plaintiffs' New Trial Motion

After the trial court issued the SOD, plaintiffs moved for a modification of the SOD, or, in the alternative, for a new trial. The motion was based on several grounds, but as pertinent here, plaintiffs requested that the court modify its SOD to find that the defective notification and defendants' failure to keep plaintiffs informed about the trust and its administration caused harm to plaintiffs. Plaintiffs contended that as a result of those breaches, they were forced to spend money litigating their rights as beneficiaries and were deprived of information that they could have used to prevent defendants' other breaches from occurring, and they were therefore entitled to attorney's fees and costs under section 16061.9, which provides that a trustee who fails to serve the notification required by section 16061.7 is liable for attorney's fees and costs caused by the failure. (§ 16061.9, subd. (a).) In the alternative, plaintiffs argued that a new trial was warranted on the issue of whether the defective notification and other breaches caused damage to plaintiffs. They further contended that the court did not make a finding as to plaintiffs' entitlement to attorney's fees and costs under section 16061.9, and that the trial court was required to award fees and costs under section 16061.9, regardless of whether there was proof of money damages.

The court denied the motion. Regarding plaintiffs' claim that the court made no finding as to their entitlement to attorney's fees and costs under section 16061.9, the court reiterated its finding in the SOD that the defective notice was "inconsequential because Petitioners failed to establish damages caused by the defective notice." The court added that "the evidence at trial supports a finding that Michael made a reasonably diligent effort to comply with the notification requirements and as such he is not required to pay Petitioner's legal fees/costs."

Plaintiffs timely appealed from the judgment.

## DISCUSSION

Plaintiffs ask us to remand with instructions to award them all attorney fees and costs that "would have been avoided" if defendants had complied with their fiduciary duties as trustees to notify and inform beneficiaries under sections 16061.7 and 16060, respectively. In general, parties pay their own attorney fees unless a contract or statute provides otherwise. (Code Civ. Proc., § 1021; *Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1595 ["Trust beneficiaries must ordinarily pay their own attorney fees in challenging the trustee's conduct, even when they are successful"].) And only a prevailing party is entitled to costs unless otherwise specified by statute. (Code Civ. Proc., § 1032, subd. (b).)

Here, plaintiffs contend they are entitled to attorney's fees and costs under subdivision (f) of former section 16061.7 (currently section 16061.9), pursuant to which defendants are liable for attorney's fees and costs "caused by" their failure to comply with their duty to notify beneficiaries under that section. (Former § 16061.7, subd. (f).) In arguing that remand is required, plaintiffs appear to challenge both the trial court's finding that they did not establish causation and its application of former section 16061.7.

### I. Governing Law

A trustee owes all beneficiaries a fiduciary duty. (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1208.) To establish a breach of fiduciary duty, plaintiffs must show the existence of a fiduciary duty, its breach, and damage proximately caused by that breach. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300 [finding that the beneficiary did not establish her claim for breach of

9

fiduciary duty under section 16060 because she suffered no compensable loss caused by the breach].)

The Probate Code codifies many of the duties a trustee owes beneficiaries. (*Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 207.) At issue here is the duty under former section 16061.7 to serve a notification on the beneficiaries when a revocable trust becomes irrevocable because of the death of one of the settlors. (Former § 16061.7, subds. (a)(1) & (b)(1).) That obligation was triggered here when Barbara died in 1998. Under former section 16061.7, subdivision (e), the notification must identify the settlors of the trust and the trustees, and advise the recipients that they are entitled to receive a copy of the terms of the trust. (Former § 16061.7, subd. (e).)[3]

At the time of defendants' alleged failure to adequately notify plaintiffs in 1998, subdivision (f) of former section 16061.7 provided, in pertinent part: "A trustee who fails to serve the notification by trustee as required by this section shall be responsible for all damages, including attorney's fees and costs, caused by the failure; provided, however, that this subdivision shall not apply in any case where a trustee makes a good faith effort to comply with this section."[4] (Former § 16061.7, subd. (f).)

---

[3] In their opening brief, plaintiffs also discuss section 16060, which states that a trustee "has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration." (§ 16060.) However, as defendants point out, there is no provision for recovery of attorney's fees based on a violation of this section, and in their reply brief, plaintiffs disavow an intent to seek a fee award based on statutes other than former section 16061.7.

[4] The Legislature has since amended the law, moving the remedy for breaches of section 16061.7 to section 16061.9. Subdivision (a) of section 16061.9 states: "A trustee who fails to serve the notification by trustee as

## II. Waiver

Before turning to the merits of plaintiffs' appeal, we address defendants' argument that plaintiffs waived their attorney's fee claim because they asserted it only prior to trial and failed to petition the court for attorney's fees at or after trial. We agree with plaintiffs that they did not waive their attorney's fee claim on that basis because the judgment did not establish grounds supporting an award of attorney's fees.

Plaintiffs' request for attorney's fees is based on their claim that defendants failed to provide the required notification under former section 16061.7. In response to plaintiffs' request for findings that respondents breached their duty to notify and were liable for all damages caused by this breach, the trial court issued a final statement of decision finding that plaintiffs had not established the element of causation for their failure-to-notify claim. Because the judgment did not establish a basis for an award of attorney's fees under former section 16061.7, plaintiffs had no reason to file a post-judgment motion for attorney's fees. Under those circumstances, their failure to do so does not waive their right to obtain appellate review of a determination by the trial court establishing that they had no entitlement to a fee award.

---

required by Section 16061.7 on a beneficiary shall be responsible for all damages, attorney's fees, and costs caused by the failure unless the trustee makes a reasonably diligent effort to comply with that section." Although plaintiffs refer to both sections in their opening brief, the parties agree, as do we, that former section 16061.7 applies here, not section 16061.9. There is no indication in section 16061.9 or in its legislative history that the Legislature intended it to apply retroactively. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209 [statutes "will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application"].)

### III. Application of Former Section 16061.7

The record in this case demonstrates that Barbara, a settlor of the trust, died in 1998, that defendants sent a section 16061.7 notification to plaintiffs "c/o" their father at an address that was not their residence, and that India did not learn of her status as a beneficiary of the trust until after her father's death in 2014. Although the trial court found that the notice was defective, it also found the claim "inconsequential" and that plaintiffs failed to establish that the lack of adequate notification caused them damage.

While plaintiffs contend that an award of attorney's fees and costs under former section 16061.7 is "mandatory," they do not dispute the express language in the statute that recovery is available only for damages, including attorney's fees, "caused by the failure . . . ." (Former § 16061.7, subd. (f), as amended by Stats. 1998, ch. 682, § 10.) Accordingly, plaintiffs argue, first, that the record establishes that the lack of adequate notice did cause them to incur attorney's fees (and potentially other damages) that otherwise would have been avoided, and second, that to the extent it is uncertain what would have happened differently had they received adequate notice in 1998, that uncertainty should be charged to defendants rather than to them. We consider these arguments in turn.

#### A. Governing Law and Standard of Review

To establish causation, a plaintiff must prove that the defendant's conduct was a "substantial factor" in bringing about his or her harm. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240.) Stated differently, evidence of causation "must rise to the level of a reasonable probability based upon competent testimony. [Citations.] 'A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes

12

more likely than not that the injury was a result of its action.' " (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 133.)

Plaintiffs argue that their appeal is subject to de novo review because the relevant facts are undisputed. But this is not a case where only one deduction or inference may reasonably be drawn from the facts concerning causation. (*Fagerquist v. Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 719.) Rather, " ' "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Lincoln v. Lopez* (2022) 77 Cal.App.5th 922, 929; accord, *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067 [" ' "Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor" ' "].)

Because plaintiffs have the burden of establishing causation at trial (Evid. Code, § 500), we will determine whether the evidence compels a finding in their favor as a matter of law (*Lincoln v. Lopez, supra*, 77 Cal.App.5th at p. 929). Any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the trial court's decision. (*Id.* at p. 928.)

### B. Application

The trial court undertook its duties to weigh the evidence and concluded that plaintiffs did not satisfy their burden to show that defendants'

13

failure to provide adequate notice under former section 16061.7 caused them damage. It is not our role to reweigh the evidence.

On appeal, plaintiffs contend that the evidence shows that if defendants had complied with their duty to notify, plaintiffs would have prevented defendants' other breaches from occurring, as demonstrated by India's attempts to obtain trust information beginning in 2015, thereby avoiding much of the legal expenses incurred by the parties in this action.

However, plaintiffs' evidence is not uncontradicted or " ' " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient' " ' " to establish causation. (*Fabian v. Renovate America, Inc.*, *supra*, 42 Cal.App.5th at p. 1067.) It does not support a finding as a matter of law that plaintiffs would have sought information about the trust and its administration in 1998 and that they would have continued to seek such information in the following years and acted on any indication of trust mismanagement. The only evidence plaintiffs cite in support of their contention is the trial court's finding that defendants breached some of their duties as trustees at various points between 1998 and 2015. Although the record demonstrates that India sought information about the trust a few months after being informed of her beneficiary status in 2014, her stated reasons for doing so were for her own estate planning and for "setting up arrangements" for Ashley after the death of their father. The trial court reasonably could have inferred that India, in seeking trust-related information, was primarily motivated to do so by those circumstances. We can only speculate as to whether plaintiffs, had they been properly notified in 1998, would have been similarly vigilant about obtaining trust-related information sixteen years earlier, when plaintiffs' circumstances were presumably different. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th

14

763, 775–776 [" 'A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, *it becomes the duty of the court to direct a verdict for the defendants*' "].)  Plaintiffs' evidence is insufficient to compel a finding of causation as a matter of law.

In their reply, plaintiffs assert two additional arguments in support of their contention that they established causation as a matter of law.  Even assuming they have not forfeited those arguments by failing to raise them in their opening brief (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685), they lack merit.  First, plaintiffs contend that the defective notice resulted in substantial fees for discovery and litigation regarding the propriety of the notice and the consequences and available remedies for defective notice.  But because defendants are liable only for damages proximately caused by the defective notification, we must distinguish between attorney's fees as damages proximately caused by a tort and attorney's fees attributable to bringing the action itself.  (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817.)  We decline to read former section 16061.7 as authorizing attorney's fees simply insofar as the beneficiary chooses to sue over the lack of adequate notice itself, because it would render essentially meaningless the statute's requirement that the damages were "caused by the failure" to provide notice.

Next, plaintiffs argue that the defective notice increased their fee expenditures in obtaining information about the trust.  They cite evidence demonstrating India's efforts to obtain information about the trust beginning in 2015 and culminating in litigation in 2017.  But again, we would have to speculate that plaintiffs would have promptly sought that information if

15

defendants had provided them proper notice under former section 16061.7 in 1998.

Accordingly, plaintiffs have not shown that the evidence compels a finding of causation as a matter of law.

## C. The Uncertainty Presumption

Anticipating that we would find their causation argument lacking, plaintiffs contend that any uncertainty about the causal effect of defendants' failure to notify should be construed against defendants—what plaintiffs term the "uncertainty presumption." They assert that defendants' failure to provide the initial notice "makes it impossible to know for sure" that defendants' other breaches would not have occurred, and so defendants should bear the risk of the uncertainty. Because plaintiffs ordinarily bear the burden of proof on their claims (Evid. Code, § 500), plaintiffs are effectively asking us to alter the allocation of the burden of proof on the causation element of their failure-to-notify claim. "On occasion, . . . courts may alter the normal allocation of the burden of proof." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1188.)

If existing law does not allocate the burden of proof on an issue, courts must consider certain factors to determine whether the usual allocation of the burden of proof should be altered. (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 539.) Those factors are: " 'the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 660–661 (*Lakin*), quoting Cal. Law Revision Com. com., 29B West's Ann. Evid. Code,

16

(1966 ed.) § 500 p. 431.) "[T]he exceptions are few, and narrow." (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1670–1673.)

However, nothing in the record demonstrates that plaintiffs objected or otherwise raised this issue in the trial court. The final statement of decision expressly stated that plaintiffs failed to establish causation. Plaintiffs filed a motion for a new trial arguing that the defective notification did, in fact, cause damage in the form of attorney fees and costs, but they never questioned that they had the burden of proof on causation. Consequently, the argument is forfeited.[5] (*California Interstate Tel. Co. v. Prescott* (1964)

_____

[5] At oral argument, plaintiffs' counsel maintained that the uncertainty presumption was raised in the motion for a new trial. We disagree. Plaintiffs wrote: "The Court's other findings and evidence in the record outlined above . . . clearly establish Mike and Valerie breached the duty to provide 16061.7 notification *and numerous other fiduciary duties*, which resulted in India and Ashley being deprived of their most basic rights as beneficiaries. India had no means to remedy those actions other than by engaging counsel and seeking relief from the Court. This caused substantial damage to India, including attorneys' fees and costs." In their reply memorandum, they wrote: "In arguing that India failed to offer evidence of the damage that she suffered caused by Respondents' breach of their duties under Probate Code Section 16061.7, Respondents ignore their 16 years of wrongful conduct as trustees during Steven's lifetime. Had India properly been made aware in 1998 that she and Ashley were remainder beneficiaries, then she could have exercised her right to obtain information about the trust administration pursuant to Section 16060 throughout the period from then until Steven's death. India would then have learned, inter alia, that Respondents were violating the Trust by making principal distributions. She would have been able to demand and obtain the Schwab records before they were unlawfully destroyed by the Respondents." There is no reference to uncertainty or to shifting the burden of proof, and no citations to legal authority addressing that issue. But even if the issue had been raised in the new trial motion, it would have been too late. (*Insurance Co. of State of Pennsylvania v. American Safety Indemnity Co.* (2019) 32 Cal.App.5th 898, 922 [declining to review defendant's new theory, raised for the first time in a

228 Cal.App.2d 408, 411 [party forfeited argument regarding shift of burden of proof by failing to object in trial court]; *Smith v. St. Jude Medical, Inc.* (2013) 217 Cal.App.4th 313, 315, fn. 1 [same]; see *People v. Accredited Surety & Casualty Co., Inc.* (2021) 65 Cal.App.5th 122, 132 [declining to decide allocation of burden of proof issue where party did not address the *Lakin* factors in the trial court or on appeal].)[6] Had the issue been raised, defendants may have been more incentivized to further develop the record regarding, for example, plaintiffs' knowledge of the trust and their beneficiary status prior to defendants' other alleged breaches.[7] (See *Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 234–235 [extent to which the plaintiff's difficulty in proving his claim was attributed to the defendant's wrongdoing was a factor the court considered in declining

new trial motion, because "[n]ew theories that could have been raised, but were not, is not one of the causes that permits a new trial"].)

[6] We note that in negligence and products liability cases, "the doctrine has evolved that the burden of proof on the issue of causation may be shifted to the defendant where demanded by public policy considerations." (*Thomas v. Lusk* (1994) 27 Cal.App.4th 1709, 1717.) " '[T]he shift of the burden of proof . . . may be said to rest on a policy judgment that when there is a substantial probability that a defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove "proximate causation" conclusively, it is more appropriate to hold the defendant liable than to deny an innocent plaintiff recovery, unless the defendant can prove that his negligence was *not* a cause of the injury.' " (*Ibid.*) But even where a plaintiff claims that the defendant's wrongdoing has made it impossible for him or her to prove causation, courts must still consider the factors set forth in *Lakin, supra*, 6 Cal.4th in determining whether the allocation of the burden of proof should be altered. (*Ibid.*)

[7] We also note that Plaintiffs do not address the *Lakin* factors in their appellate brief, and thus they have not established that the burden of proof should be allocated to defendants. (*People v. Miralrio* (2008) 167 Cal.App.4th 448, 452, fn. 4 [an appellate court is not required to address undeveloped claims or ones inadequately briefed].)

to shift the allocation of the burden of proof].)  "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider."  (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Although plaintiffs contend that "settled law" dictates the application of the uncertainty presumption in this case, plaintiffs have not shown that the trial court's allocation of the burden of proof constitutes legal error here. (*Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 677, fn. 5 [where "assignment of the burden of proof constitutes legal error appearing on the face of the statement of decision," the contention that the trial court misallocated the burden of proof is not forfeited by failing to raise it in the trial court].)  In our research, we have not found any cases or statutes, and plaintiffs have not provided any, that have created a presumption allocating the burden of proof on causation for a breach-of-fiduciary-duty claim to a defendant trustee that breached its duty under section 16061.7.  Plaintiffs' cases are inapposite.  They cite *Estate of McCabe* (1950) 98 Cal.App.2d 503, in which a mother was charged with the mismanagement of a trust set up for the care of her daughter.  (*Id.* at pp. 504–505.)  Filing an account covering 15 years of the daughter's living expenses, the mother listed various costs without any itemization, and she had no records to justify the expenses claimed.  (*Id.* at p. 506.)  The appellate court noted that "the burden of proof is on" trustees "to prove every item of their account by 'satisfactory evidence' " and that "any doubt arising from their failure to keep proper records, or from the nature of the proof they produce, must be resolved against them."  (*Id.* at p. 505.)  But the rule pronounced in *Estate of McCabe* does not extend to anything other than the correctness of the trustee's

19

accounts. (*Neel v. Barnard* (1944) 24 Cal.2d 406, 420–421.) It does not support plaintiffs' contention that defendants have the burden of proof on the causation element of plaintiffs' failure-to-notify claim.

Also inapposite is *Highland Ranch v. Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848. There, the Supreme Court held that the Agricultural Labor Relations Board (ALRB) had properly imposed a remedy of limited back pay for an employer's failure to negotiate with a labor union before terminating its business, even though it was impossible to " 'reestablish a situation equivalent to that which would have prevailed had the (employer) more timely fulfilled its statutory bargaining obligation.' " (*Id.* at pp. 862–866.) Citing the ALRB's broad remedial powers under Labor Code section 1160.3, which includes the power to "mak[e] employees whole" for the loss of pay resulting from the employer's refusal to bargain, the court reasoned that limited backpay was an appropriate remedy to effectuate the ALRB's order directing the employer to bargain with the union and to ensure the employer would not profit from its unfair labor practice. (*Ibid.*) But the presumption affecting the burden of proof approved by the *Highland Ranch* court only applies to cases involving a technical refusal to bargain because in those types of cases, "the evidence that the parties would not have entered into an agreement even if they had negotiated in good faith is necessarily speculative." (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1285, 1293.) We do not see that the question whether a failure to notify under former section 16061.7 caused damage will necessarily be plagued by the same uncertainty that attends an effort to predict the result of a good faith negotiation that did not occur.

*County of El Dorado v. Schneider* (1987) 191 Cal.App.3d 1263, another case cited by plaintiffs, involved evidentiary sanctions against a party that

20

did not comply with discovery requirements, and not a presumption affecting the burden of proof. There, the trial court resolved the question of paternity against the father under former Evidence Code section 892 after the father refused to submit to an order for blood tests. (*Id.* at pp. 1265–1266.) "By his wrongful refusal to take the test, defendant has deprived the county and this court of any opportunity to evaluate the probative value of the blood test evidence. The probative value is therefore uncertain." (*Id.* at p. 1276.) Here, plaintiffs have not argued that defendants failed to comply with their discovery obligations, or that defendants have deprived plaintiffs of an opportunity to evaluate the probative value of specific evidence.

Finally, plaintiffs cite a Delaware case, *McNeil v. McNeil* (Del. 2002) 798 A.2d 503, that is not binding on us (*Acco Contractors, Inc. v. McNamara & Peepe Lumber Co.* (1976) 63 Cal.App.3d 292, 296), and that is distinguishable in any event. In *McNeil*, the trust at issue was one of five created by McNeil, with four of the trusts designated for the benefit of McNeil's four children (the resulting trusts). (*McNeil*, at p. 506.) McNeil established the fifth trust for his wife. (*Ibid.*) One of McNeil's children, Hank, became estranged from the family, and the trustees of the wife's trust kept him in the dark about his beneficiary status under the wife's trust and his right as a beneficiary to seek distributions from it. (*Id.* at p. 507.) Upon learning of his beneficiary status, Hank filed a complaint seeking a make-up distribution from the trust, and after a trial, the Court of Chancery ordered a make-up distribution of 7.5 percent of the value of Hank's resulting trust. (*Id.* at pp. 507–508.) On appeal, the reviewing court noted that the imposition of a make-up trust distribution was, "to a certain degree, speculative because it assumes that (a) Hank would have requested distribution had he known his status as a current beneficiary and (b) the

21

trustees would have granted his request . . . ." (*Id.* at p. 511.)  It nonetheless
concluded that the Court of Chancery did not abuse its discretion in part
because there was "ample reason to believe that Hank would have satisfied
the demand requirement since he was continually seeking additional
distribution from his own trust.  Whether the trustees would have honored
Hank's request is open to question but any doubt in that regard must be
resolved against the trustees whose conduct led to the litigation and ultimate
resolution of Hank's entitlement." (*Ibid.*)

In *McNeil*, the beneficiary sought an equitable remedy. (*McNeil v.
McNeil, supra*, 798 A.2d at pp. 507, 509, 511.)  The Court of Chancery had
"broad" discretion to fashion an equitable remedy for the trustees' fiduciary
breaches, and the reviewing court found that the Court of Chancery did not
abuse its discretion in imposing a make-up distribution. (*Id.* at pp. 509, 511.)
Here, plaintiffs sought attorney's fees and costs under former
section 16061.7, so we must resolve every conflict in favor of the trial court's
finding that plaintiffs failed to establish causation on that claim. (*Lincoln v.
Lopez, supra*, 77 Cal.App.5th at p. 928.)  We have already concluded the
evidence and reasonable inferences support that finding.  Moreover, as
discussed above, the evidence in the record does not establish what India
likely would have done differently had she received the notice in 1998, and
plaintiffs did not seek to offer testimony on that issue.

We therefore conclude that the trial court did not err as a matter of law
in finding that plaintiffs failed to establish causation on their failure-to-notify
claim.  And because we affirm on this basis, we have no reason to consider
the trial court's additional finding in denying plaintiffs' motion for a new
trial—albeit under the "reasonable diligence" standard of section 16061.9
rather than the "good faith effort" standard of former section 16061.7—that

22

the deficiency in mailing the notice to plaintiffs in care of their father would not have warranted an award of attorney's fees in any event.

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
BROWN, J.